IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES VANDERBILT, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 06-1052-CV-HFS |
| BP CORPORATION NORTH AMERICA, INC., | ) | JURY TRIAL REQUESTED |
| CASEY'S GENERAL STORES, INC., | ) | |
| CHEVRON USA, INC., | ) | |
| CIRCLE K STORES, INC., | ) | |
| CITGO PETROLEUM CORPORATION, | ) | |
| COASTAL MART, INC., | ) | |
| CONOCOPHILLIPS COMPANY, | ) | |
| COSTCO WHOLESALE CORPORATION, | ) | |
| EXXON MOBIL CORPORATION, | ) | |
| FLYING J, INC., | ) | |
| KUM & GO, L.C., | ) | |
| MFA OIL COMPANY, INC., | ) | |
| PETRO STOPPING CENTERS, LP, | ) | |
| PILOT TRAVEL CENTERS, LLC, | ) | |
| PRESTO CONVENIENCE STORES, LLC, | ) | |
| 7-ELEVEN, INC., | ) | |
| SHELL OIL COMPANY, | ) | |
| SINCLAIR OIL CORPORATION, | ) | |
| VALERO MARKETING AND SUPPLY COMPANY, | ) | |
| WAL-MART STORES, INC., d/b/a Sam's Club, | ) ) | |
| Defendants. | ) | |

## **COMPLAINT**

COMES NOW Plaintiff James Vanderbilt, by and through the undersigned counsel, on his

own behalf and as a representative of a class of purchasers similarly situated, and for his causes of

action against the Defendants, states and alleges as follows:

1

<u>PARTIES</u>

1.    Plaintiff James Vanderbilt is, and at all times herein referenced was, an individual residing at 11504 Orchard, Kansas City, Missouri, 64134.

2.    Defendant BP Corporation North America, Inc. ("BP Amoco") is, and at all times herein referenced was, an Indiana corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: The Prentice-Hall Corporation System, Missouri, Inc., 221 Bolivar Street, Jefferson City, MO 65101-0000.

3.    Defendant Casey's General Stores, Inc. ("Casey's") is, and at all times herein referenced was, an Iowa corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: The Corporation Company, 120 South Central Avenue, Clayton, MO 63105-0000.

4.    Defendant Chevron USA, Inc. ("Chevron") is, and at all times herein referenced was, a Pennsylvania corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: The Prentice-Hall Corporation System, Missouri, Inc., 221 Bolivar Street, Jefferson City, MO 65101-0000.

5.    Defendant Circle K Stores, Inc. ("Circle K") is, and at all times herein referenced was, a Texas corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: Corporation Service Company, 221 Bolivar Street, Jefferson City, MO 65101-0000.

2

6.     Defendant CITGO Petroleum Corporation ("CITGO") is, and at all times herein referenced was, a Delaware corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: The Corporation Company, 120 South Central Avenue, Clayton, MO 63105-0000.

7.     Defendant Coastal Mart, Inc. ("Coastal") is, and at all times herein referenced was, a Delaware corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: C T Corporation System, 120 South Central Avenue, Clayton, MO 63105-0000.

8.     Defendant ConocoPhillips Company ("Conoco") is, and at all times herein referenced was, a Delaware corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: United States Corporation Company, 221 Bolivar Street, Jefferson City, MO 65101-0000.

9.     Defendant Costco Wholesale Corporation ("Costco") is, and at all times herein referenced was, a Washington corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: C T Corporation System, 120 South Central Avenue, Clayton, MO 63105-0000.

10.     Defendant Exxon Mobil Corporation ("Diamond Shamrock") is, and at all times herein referenced was, a New Jersey corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the

3

State of Missouri and available for service of process via a Registered Agent, to wit: Corporation Service Company, 221 Bolivar Street, Jefferson City, MO 65101-0000.

11.     Defendant Flying J, Inc. ("Flying J") is, and at all times herein referenced was, a Utah corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: CSC – Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, MO 65101-0000.

12.     Defendant Kum & Go, L.C. ("Kum & Go") is, and at all times herein referenced was, an Iowa corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: CSC – Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, MO 65101-0000.

13.     Defendant MFA Oil Company ("MFA") is, and at all times herein referenced was, a Missouri corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: Beverly Twellman, One Ray Young Drive, P.O. Box 519, Columbia, MO 65205-0000.

14.     Defendant Petro Stopping Centers, LP ("Petro") is, and at all times herein referenced was, a Delaware corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: Capitol Corporate Services, Inc., 300-B East High Street, Jefferson City, MO 65101-0000.

15.     Defendant Pilot Travel Centers, LLC ("Pilot") is, and at all times herein referenced was, a Delaware corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: C T Corporation System, 120 South Central Avenue, Clayton, MO 63105-0000.

16.     Defendant Presto Convenience Stores, LLC ("Presto") is, and at all times herein referenced was, a Missouri corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: C T Corporation System, 120 South Central Avenue, Clayton, MO 63105-0000.

17.     Defendant 7-Eleven, Inc. ("7-Eleven") is, and at all times herein referenced was, a Texas corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: CSC – Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, MO 65101-0000.

18.     Defendant Shell Oil Company ("Shell") is, and at all times herein referenced was, a Delaware corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: CSC – Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, MO 65101-0000.

19.     Defendant Sinclair Oil Corporation ("Sinclair") is, and at all times herein referenced was, a Wyoming corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and

5

available for service of process via a Registered Agent, to wit: CSC – Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, MO 65101-0000.

20.     Defendant Valero Marketing and Supply Company ("Valero") is, and at all times herein referenced was, a Delaware corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: The Corporation Company, 120 South Central Avenue, Clayton, MO 63105-0000.

21.     Defendant Wal-Mart Stores, Inc., d/b/a Sam's Club ("Wal-Mart") is, and at all times herein referenced was, a Delaware corporation registered to transact business within the State of Missouri, transacting substantial business in Missouri, having certain minimal contacts with the State of Missouri and available for service of process via a Registered Agent, to wit: C T Corporation System, 120 South Central Avenue, Clayton, MO 63105-0000.

22.     The Defendants set forth above are hereinafter sometimes collectively referred to as the "Defendants".

<u>JURISDICTION AND VENUE</u>

23.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because:

a.     This is a civil action filed pursuant to Fed.R.Civ.P. 23 brought by one or more representative persons as a class action, with minimal diversity between the parties;

b.     The amount in controversy of all class members in the aggregate exceeds the sum or value of $5,000,000.00, exclusive of interest and costs;

c.     The members of the putative class are citizens of the State of Missouri, which is not the State of residence for some, or all, of the Defendants, and

6

d.　　All other factual conditions precedent necessary to empower this Court with subject matter jurisdiction and personal jurisdiction are satisfied.

24.　　Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one or more of the Defendants reside in this District, one or more of the Defendants are subject to personal jurisdiction in this District and a substantial number of the transactions at issue in this action occurred in this District.

## FACTUAL ALLEGATIONS WITH RESPECT TO ALL COUNTS

25.　　This class action arises from the Defendants' deceptive and misleading practices, and conspiracy to further the same, in the sale of Motor Fuel to consumers and businesses within the State of Missouri, and is brought by the Plaintiff individually and on behalf of all other similarly situated persons and entities who purchased Motor Fuel at a temperature greater than 60 degrees Fahrenheit from one or more of the Defendants in the State of Missouri (hereinafter referred to as the "Class").

26.　　The Plaintiff is a resident of the State of Missouri who has purchased Motor Fuel from one or more of the Defendants within the State of Missouri at a temperature greater than 60 degrees Fahrenheit for personal or business uses and purposes on numerous occasions, and has been injured in the manner alleged herein.

27.　　The Plaintiff and the Class are consumers and businesses that buy refined petroleum ("Motor Fuel") from the Defendants for personal and business uses.

28.　　The Defendants are, for the most part, organizations that sell Motor Fuel to consumers and businesses at various gasoline stations, convenience stores and other sales facilities in the State of Missouri.

7

29. The combustion of Motor Fuel results in the generation of energy utilized by various types of machines and engines created to power a variety of mechanical products utilized by the Plaintiff class members. These devices include such items as automobiles, other motor vehicles, boats, and a variety of home-improvement/maintenance products that operate with internal combustion engines.

30. The plaintiff class members purchase Motor Fuel, and they do so with the expectation that they are purchasing a certain amount of energy.

31. Motor Fuel, which is categorized as a petroleum distillate and maintained and sold in liquid form, has certain physical properties that allow the liquid to expand in volume as it increases in temperature, and contract in volume as it decreases in temperature.

32. Specifically, a set unit of Motor Fuel will increase volumetrically as it increases in temperature by becoming less dense, and decrease volumetrically as it decreases in temperature by becoming more dense, when compared to a known density standard (such as in relation to the specific gravity of water).

33. Thus, a volumetrically-measured "gallon" of Motor Fuel at 60 degrees Fahrenheit will expand to become a volume greater than a "gallon" if the temperature is increased, but will contract to become a volume less than the same "gallon" at 60 degrees Fahrenheit, if the temperature falls below 60 degrees Fahrenheit.

34. By way of example, one U.S. "gallon" (defined as a liquid with a volume of 231 cubic inches) of Motor Fuel at 60 degrees Fahrenheit occupies a space of 231 cubic inches, but the same quantity of gasoline at 90 degrees Fahrenheit has a volume in excess of 235 cubic inches.

35.     Thus, due to the physical properties of Motor Fuel described above, the <u>amount</u> of energy that can be generated by Motor Fuel which fills a 231-cubic-inch space will necessarily vary with the temperature of the motor fuel produced in that volume of space.

36.     In other words, a "gallon" (defined volumetrically without reference to temperature) of Motor Fuel at any given temperature does not contain an equivalent amount of Motor Fuel as a "gallon" (defined volumetrically without reference to temperature) of Motor Fuel at a different temperature.  Thus, a "gallon" defined volumetrically without reference to temperature is not a standard unit of measure.

37.     More to the point, a "gallon" of Motor Fuel has fewer individual molecules of petroleum distillate and hydrocarbons per cubic inch when expanded (i.e., hotter and therefore less dense) than when contracted (i.e., cooler and therefore more dense).

38.     Accordingly, there is less "energy", when defined in terms of a BTU,[1] in a warmer and less dense "gallon" of Motor Fuel than in a cooler and more-dense "gallon" of Motor Fuel.

39.     Recognizing the potential for unequal bargaining between sellers and buyers of Motor Fuel in the absence of a uniformly-measured standardized unit of Motor Fuel, the Defendants and other members of the domestic petroleum industry, acting collectively and through American Petroleum Institute, the Defendants' jointly-controlled enterprise, have defined (at least at the wholesale and/or non-retail distribution level) a "gallon" of Motor Fuel as the amount of volume that occupies 231 cubic inches when the temperature is 60 degrees Fahrenheit (the "Standard Gallon").

40.     In addition and at the behest of several of the defendants and/or their predecessors, the National Bureau of Standards (the "Bureau") has implemented a standard known as ASTM-IP D 1250, which also defines a standard unit of measurement for a U.S. "gallon" (hereinafter "Standard

---

1  The standard unit in the United States for measuring the heat value or energy content of a liquid fuel, defined as

9

Gallon") of Motor Fuel as 231 cubic inches at 60 degrees Fahrenheit. This standard adopted and endorsed by the defendants (for wholesale purposes) attempts to ensure that the amount of fuel and/or energy contained in a defined "gallon" of Motor Fuel is exactly the same and that such "gallons" are fungible in nature.

41.     With the exception of service station pumps where Motor Fuel is sold as a retail fungible commodity to consumers such as the Plaintiff and the Class, the Defendants implemented and adhere to, the Standard Gallon by using temperature-correction devices on Motor Fuel dispensation equipment that correct the volumetric amount of Motor Fuel to allow for fluctuations in temperature above or below 60 degrees Fahrenheit.

42.     Establishment of the Standard Gallon within the petroleum industry ensured that the actual amount of fuel (and energy) contained in each "gallon" was uniform, and that no seller or buyer of Motor Fuel (at the wholesale level) could profit from non-temperature corrected Motor Fuel measurements.

43.     Upon information and belief, with the exception of Motor Fuel sales to the ultimate purchaser (i.e., consumers such as the Plaintiff and the Class), the Defendants utilize the Standard Gallon measurement in all transactions involving the sale and purchase of Motor Fuel in the State of Missouri.

44.     Unlike transactions within the petroleum industry on a wholesale and/or distribution basis, the Defendants advertise and market Motor Fuel to consumers for retail sale at a specified price per "gallon", but do not expressly define a "gallon".

45.     When the Plaintiff and the Class purchase Motor Fuel from the Defendants, they are purchasing energy, with an anticipation that a "gallon" of Motor Fuel sold when the temperature is

---

the amount of heat required to raise the temperature of one "pound" of water by 1 degree Fahrenheit.

60 degrees Fahrenheit contains the same amount of energy as a "gallon" of Motor Fuel sold when the temperature is above 60 degrees Fahrenheit, and that the per unit price of Motor Fuel results in a uniform amount of energy for their purposes, regardless of where geographically the Motor Fuel is purchased.

46.     The average temperature of Motor Fuel sold annually in the United States, and specifically including the state of Missouri, exceeds 60 degrees Fahrenheit.

47.     When the Defendants sell Motor Fuel to the Plaintiff and the Class that exceeds 60 degrees Fahrenheit, the Plaintiff and the Class are suffering damages resulting from the loss of energy per "gallon" of Motor Fuel due to the expansion of the Motor Fuel, that the Plaintiff and the Class would not suffer if the Defendants sold Motor Fuel utilizing a Standard Gallon measurement.

48.     Despite their knowledge that continuing to sell Motor Fuel to Missouri consumers without utilizing temperature-correction devices is damaging to such consumers and to the financial detriment of such consumers, the Defendants have resisted all efforts to change their deceptive marketing practices and retrofit service station fuel pumps with temperature-correction devices because the petroleum industry profits from the sale of Motor Fuel to consumers at non-standard, non-temperature-adjusted "gallons".

49.     When acting as retail sellers of Motor Fuel, the Defendants have refused to install temperature compensation equipment at their retail outlets, despite the fact that such technology has been readily available and utilized within the industry for many years.

50.     Furthermore, when acting as franchisors, the Defendants control the specifications of the Motor Fuel dispensing devices at their franchisees' retail locations and prohibit their franchisees from installing such readily-available and technically feasible temperature compensation equipment.

51.     The industry-wide practice of selling non-standard, non-temperature-adjusted Motor Fuel at the retail level has additional anti-competitive effects that harm consumers, including Plaintiff and Class Members, and benefit retailers, including the Defendants.

52.     The temperature at which Defendants sell Motor Fuel varies significantly from retailer to retailer. Consequently, because the Defendants refuse to install widely available temperature-compensation equipment, the amount of energy via Motor Fuel that a consumer actually obtains at a given price varies from retailer to retailer, and from purchase to purchase.

53.     Defendants' refusal to sell standardized, temperature-adjusted Motor Fuel at the retail level obscures the true price of Motor Fuel and/or energy, and raises the costs that consumers must incur to ascertain the true quantity, and thus the true price-per-gallon, of the Motor Fuel and/or energy that they purchase.

54.     Variations in the temperature at which non-standardized quantities of Motor Fuel are sold make the actual price of Motor Fuel less observable and increase consumers' search costs.

55.     Defendants' refusal to sell standardized, temperature-adjusted Motor Fuel at the retail level, or to report the temperature at which a given batch of Motor Fuel is delivered, prevents consumers, including the Plaintiff class members, from accurately making even rudimentary price comparisons, so as to determine where it is most economically advantageous to purchase Motor Fuel.

56.     For example, many consumers track the fuel economy of their vehicles, both to ensure that their vehicles remain in proper working order, and to determine which "brand" of Motor Fuel delivers optimal performance.

57.     The variation in the actual amounts of Motor Fuel delivered introduces substantial uncertainty into consumers' efforts to gauge the performance of their vehicles as well as the

performance of the Motor Fuel products that they are purchasing, leading to sub-optimal choice of Motor Fuel "brand."

58.     Because consumers cannot make fully informed decisions about which "brand" of Motor Fuel delivers optimal performance, Defendants' refusal to sell standardized, temperature-adjusted Motor Fuel at the retail level foils consumer choice and thus impairs basic market competition.

## CLASS ALLEGATIONS

59.     Unless otherwise specifically stated herein, and pursuant to Fed.R.Civ.P. 23, this action is instituted by the Plaintiff on behalf of himself and all other similarly situated persons and entities who purchased Motor Fuel at a temperature greater than 60 degrees Fahrenheit from one or more of the Defendants in the State of Missouri (hereinafter referred to as the "Class").

60.     By virtue of this action, the Plaintiff and the Class members are, and should be considered as, pursuing and alleging all causes of action they have against the Defendants arising out of the foregoing factual allegations, regardless of whether such causes of action are expressly stated or set forth herein.

61.     The class referenced above includes all putative class members residing throughout the State of Missouri, and includes thousands of individuals, and therefore the class is so numerous that joinder of all members of the class would be impractical.

62.     The claims for relief asserted herein on behalf of the Plaintiff and the putative class members present questions of law and fact common to the class, including:

a.      Whether the Defendants' sell Motor Fuel to consumers at temperatures above 60 degrees Fahrenheit;

b. Whether "gallon" as that term is used in the retail sale of Motor Fuel is a standard unit of measure which has a recognized and permanent value, such that the amount of Motor Fuel in one gallon does not vary and is always the same in every gallon;

c. Whether the Defendants' practice of measuring Motor Fuel delivered in retail sales transactions by a non-standard, non-temperature-adjusted "gallon" is an unfair practice;

d. Whether the Defendants' practice of measuring Motor Fuel delivered in retail sales transactions by a non-standard, non-temperature-adjusted "gallon" is a fraudulent practice;

e. Whether the Defendants' practice of measuring Motor Fuel delivered in retail sales transactions by a non-standard, non-temperature-adjusted "gallon" is a deceptive practice;

f. Whether the Defendants' practice of measuring Motor Fuel delivered in retail sales transactions by a non-standard, non-temperature-adjusted "gallon" is an unlawful practice;

g. Whether the Defendants' practice of measuring Motor Fuel delivered in retail sales transactions by a non-standard, non-temperature-adjusted "gallon" is an unconscionable and unfair practice;

h. Whether the Defendants' practice of measuring Motor Fuel delivered in retail sales transactions by a non-standard, non-temperature-adjusted "gallon" has harmed Plaintiff and Class Members;

14

i. Whether the Defendants' practice of measuring Motor Fuel delivered in retail sales transactions by a non-standard, non-temperature-adjusted "gallon" should be enjoined; and

j. Whether the Defendants should be required to make Plaintiff and class members whole for any harm caused by the Defendants' practice of measuring Motor Fuel delivered in retail sales transactions by a non-standard, non-temperature-adjusted "gallon" and, if so, in what amount.

63. The claims of the named representative Plaintiff are typical of the claims of the putative class in that:

a. The Plaintiff and the putative class members all purchased Motor Fuel at a temperature greater than 60 degrees Fahrenheit from one or more of the Defendants in the State of Missouri;

b. The claims of the Plaintiff and the putative class members have the same essential characteristics, and

c. The claims of the Plaintiff and the putative class members arise from the same general course of conduct and are based on the same legal theories.

64. The Plaintiff, as the representative Plaintiff for the putative class, will fairly and adequately protect the interests of the putative class because:

a. The Plaintiff has knowledge regarding the facts and circumstances that give rise to his claims and the claims of the putative class members;

b. The Plaintiff is strongly interested and highly motivated to assert and protect his own rights and the rights of the putative class in a vigorous fashion; and

15

c. The Plaintiff has retained as class counsel attorneys with substantial experience and expertise in class actions, commercial litigation and business litigation and which have the necessary and requisite resources. These attorneys will also vigorously assert and protect the interests of the putative class members.

65. The questions of law and/or fact common to the Plaintiff and the putative class members predominate over any questions affecting only individual members of the class, and a class action as asserted herein is superior to other available methods for the fair and efficient adjudication of this controversy, in that, among other elements:

a. The interests of the Plaintiff and the interests of individual class members in controlling the prosecution of separate actions are outweighed by the advantages of adjudicating the common issues of fact and law by means of a class action; individual actions would not be practical considering the relatively small amount of each individual class members' claim;

b. Upon information and belief, there are no pending certified class actions concerning the controversy at issue or the claims asserted in this case applicable to the Plaintiff or the putative class members set forth herein;

c. Concentrating litigation of these claims in this forum is desirable because it will prevent and avoid a duplication of effort and the possibility of inconsistent results, and this forum represents an appropriate forum to settle the controversy based on the location of the Plaintiff, the putative class members, the fact that the Defendants do substantial business in this jurisdiction, and the availability of witnesses and evidence; and

d.  Any difficulties that may be encountered in management of the class are greatly outweighed by the difficulties of handling multiple actions by individual class members; this class action is a superior method because it furthers judicial economy and efficiency and is in the best interests of the Plaintiff and the putative class members.

<u>COUNT I</u>
<u>CIVIL CONSPIRACY</u>

COMES NOW Plaintiff and for Count I of this Complaint against the Defendants, states and alleges as follows:

66.  To the extent they are not inconsistent, the Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 65 of this Complaint as if more fully set forth herein.

67.  This claim is brought by the Plaintiff on behalf of himself and all other similarly situated persons and entities who purchased Motor Fuel at a temperature greater than 60 degrees Fahrenheit from one or more of the Defendants in the State of Missouri.

68.  The Defendants, and each of them, had actual or constructive knowledge of the terms and details of the qualities and characteristics of Motor Fuel as set forth above, including but not limited to, knowledge that the sale of Motor Fuel to the Plaintiff and the Class members at a temperature above 60 degrees Fahrenheit was deceptive, unconscionable, not in good faith and contrary to the accepted petroleum industry practice of measuring and selling Motor Fuel using a temperature-corrected, standardized gallon measurement, and knowledge of the rights of the Plaintiff and the Class members regarding such sales, and that such sales would cause pecuniary damage to the Plaintiff and the Class members, all as set forth above.

17

69.     The Defendants, and each of them, with intent to unlawfully deprive the Plaintiff and the Class members of their right to purchase Motor Fuel on a temperature-adjusted basis, combined, agreed and came to a meeting of the minds on an unlawful course of action to unlawfully deprive Plaintiff and the Class members of such rights, by selling Motor Fuel on a non-temperature adjusted basis and by refusing to implement technology that would correct for temperature.

70.     In furtherance of, and pursuant to, their unlawful plan, scheme and agreement, the Defendants committed the acts set forth above, including but not limited to their concerted attempts to obstruct and/or restrict implementation and installment of temperature-adjustment devices on Motor Fuel pumps through the State of Missouri and the country and sell consumers non-temperature corrected Motor Fuel, such acts being unlawful, and did unlawfully deprive Plaintiff and the Class members of their rights.

71.     As a direct and proximate result of the unlawful actions taken by Defendants in furtherance of their plan and scheme, the Plaintiff and the Class members have suffered pecuniary damages resulting from the purchase of Motor Fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

WHEREFORE, Plaintiff James Vanderbilt, on behalf of himself and all other Class Members, prays the Court for judgment against the Defendants, jointly and severally, for his actual damages in an amount to be determined at trial, with post judgment interest at the statutory rate, for injunctive relief requiring the Defendants to retrofit and install temperature-correction devices to avoid future damages, as well as his attorneys' fees and costs, and for such other and further relief as the Court deems appropriate.

18

<u>COUNT II</u>
<u>DUTY OF GOOD FAITH AND FAIR DEALING</u>

COMES NOW Plaintiff and for Count II of this Complaint against the Defendants, states and alleges as follows:

72.     To the extent they are not inconsistent, the Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 71 of this Complaint as if more fully set forth herein.

73.     This claim is brought by the Plaintiff on behalf of himself and all other similarly situated persons and entities who purchased Motor Fuel at a temperature greater than 60 degrees Fahrenheit from one or more of the Defendants in the State of Missouri.

74.     Plaintiff and the Class Members entered into individual sales transactions and agreements with the Defendants for the purchase of Motor Fuel pursuant to which, the Plaintiff and Class Members agreed to purchase, at the prevailing posted rate, Motor Fuel from the Defendants that consisted of certain qualities and characteristics as represented by the Defendants, and the Defendants agreed to sell such Motor Fuel that comprised of such qualities and characteristics.

75.     Plaintiff and the Class Members have fully performed their obligations with the Defendants under such transactions and agreements.

76.     Defendants had a duty to exercise, and act in, good faith and fair dealing in the performance of such sales transactions and agreements.

77.     Defendants breached their duty to exercise, and act in, good faith and fair dealing in the performance of such sales transactions and agreements, in the manner and the particulars set forth above.

78.     As a direct and proximate result of the Defendants' failure to abide and comply with their obligations and duties, the Plaintiff and the Class Members have suffered pecuniary damages

Case 4:06-cv-01052-FJG   Document 1   Filed 12/30/06   Page 19 of 25

resulting from the purchase of Motor Fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

WHEREFORE, Plaintiff James Vanderbilt, on behalf of himself and all other Class Members, prays the Court for judgment against the Defendants, jointly and severally, for his actual damages in an amount to be determined at trial, with post judgment interest at the statutory rate, for injunctive relief requiring the Defendants to retrofit and install temperature-correction devices to avoid future damages, as well as his attorneys' fees and costs, and for such other and further relief as the Court deems appropriate.

COUNT III
MISSOURI MERCHANDISING PRACTICES ACT

COMES NOW Plaintiff and for Count III of this Complaint against the Defendants, states and alleges as follows:

79.     To the extent they are not inconsistent, the Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 78 of this Complaint as if more fully set forth herein.

80.     This claim is brought by the Plaintiff on behalf of himself and all other similarly situated persons and entities who purchased Motor Fuel at a temperature greater than 60 degrees Fahrenheit from one or more of the Defendants in the State of Missouri.

81.      The Plaintiff and Class Members purchased Motor Fuel from the Defendants for primarily personal, family or household purposes, within the context and meaning of the Missouri Merchandising Practices Act, R.S.Mo. § 407.010, et seq.

82.     The Defendants made various misrepresentations to the Plaintiff and Class Members, and violated and continue to violate the Missouri Merchandising Practices Act through various

deceptive acts and practices associated and related to the sale of Motor Fuel as set forth above, including but not limited to:

a. Delivering to Plaintiff and Class Members Motor Fuel substantially in excess of 60 degrees Fahrenheit;

b. Representing to Plaintiff and Class Members Motor Fuel unit prices in terms of the standard unit of a "gallon," when in fact Defendants deliver and sell non-standard "gallons" of Motor Fuel measured volumetrically without reference to temperature;

c. Delivering to Plaintiff and Class Members less Motor Fuel than Defendants agreed to deliver when the temperature of the Motor Fuel exceeded 60 degrees Fahrenheit;

d. Concealing, suppressing and omitting that Defendants are delivering to Plaintiff and class members Motor Fuel in excess of 60 degrees Fahrenheit;

e. Concealing, suppressing and omitting that the standard U.S. Petroleum Gallon in the Motor Fuel industry at all levels of distribution except the retailer-to-consumer level of distribution is 231 cubic inches at 60 degrees Fahrenheit;

f. Concealing, suppressing and omitting that each volumetric gallon of Motor Fuel sold by the Defendants at the retail level contains less Motor Fuel than the standard U.S. Petroleum Gallon;

g. Concealing, suppressing and omitting that each volumetric gallon of Motor Fuel sold by the Defendants at the retail level contains less energy than the standard U.S. Petroleum Gallon;

h. Concealing, suppressing and omitting that the energy content of Motor Fuel sold by the Defendants varies according to its temperature;

i. Concealing, suppressing and omitting that the term gallon used by the Defendants in

the sale of Motor Fuel to consumers at the retail level of distribution is not a standard unit of measure;

j.     The Defendants intended to do the aforementioned acts and intended that Plaintiff and class members would rely on the Defendants' concealments, suppressions or omissions in the purchase of Motor Fuel.

83.     The representations of the Defendants set forth above were deceptive because such representations were false, misleading, deceptive and mischaracterized the characteristics of the Motor Fuel sold by the Defendants referenced above.

84.     The Defendants made such representations to the Plaintiff and the Class Members knowing and/or with reason to know that the representations were false, misleading and deceptive for multiple reasons, including but not limited to, the fact that the Motor Fuel did not have the characteristics and qualities as represented by the Defendants, and such representations were made to the Plaintiff and the Class Members by the Defendants in connection with Defendants' sale of Motor Fuel to the Plaintiff and Class Members.

85.     The Defendants willfully concealed, suppressed, omitted and failed to inform the Plaintiff and the Class Members that the Motor Fuel did not have the characteristics and qualities as represented by the Defendants, and the fact that the Motor Fuel lacked such characteristics and qualities was a material fact not disclosed by the Defendants.

86.     The Plaintiff and the Class Members relied upon the Defendants' misrepresentations, omissions of material facts and deceptive acts or practices set forth above, which have caused them to suffer ascertainable pecuniary damages resulting from the purchase of Motor Fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

WHEREFORE, Plaintiff James Vanderbilt, on behalf of himself and all other Class Members, prays the Court for judgment against the Defendants, jointly and severally, for his actual damages in an amount to be determined at trial, with post judgment interest at the statutory rate, for injunctive relief requiring the Defendants to retrofit and install temperature-correction devices to avoid future damages, for punitive damages to deter the Defendants from further unlawful conduct, as well as his attorneys' fees and costs, for all other damages and remedies available pursuant to the Merchandising Practices Act, R.S.Mo. § 407.010, et seq., and for such other and further relief as the Court deems appropriate.

COUNT IV
RECOVERY UNDER QUANTUM MERUIT/UNJUST ENRICHMENT

COMES NOW Plaintiff and for Count IV of this Complaint against the Defendants, states and alleges as follows:

87. To the extent they are not inconsistent, the Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 86 of this Complaint as if more fully set forth herein.

88. This claim is brought by the Plaintiff on behalf of himself and all other similarly situated persons and entities who purchased Motor Fuel at a temperature greater than 60 degrees Fahrenheit from one or more of the Defendants in the State of Missouri.

89. The Plaintiff and the Class Members conferred a benefit upon the Defendants by purchasing from the Defendants Motor Fuel at the prevailing posted rate, when the Motor Fuel was dispensed at a temperature greater than 60 degrees Fahrenheit.

90. The Defendants appreciated and had knowledge of the benefit conferred upon them by the Plaintiff as referenced above.

91.     Defendants accepted and retained the benefit conferred upon them by the Plaintiff under such circumstances that acceptance and retention of the benefit is not equitable without payment for the same to the Plaintiff and Class Members.

92.     As a direct and proximate result of the Defendants' actions set forth above, the Plaintiff and the Class Members have suffered pecuniary damages resulting from the purchase of Motor Fuel above 60 degrees Fahrenheit in an amount that has not yet been determined.

WHEREFORE, Plaintiff James Vanderbilt, on behalf of himself and all other Class Members, prays the Court for judgment against the Defendants, jointly and severally, for his actual damages in an amount to be determined at trial, with post judgment interest at the statutory rate, for injunctive relief requiring the Defendants to retrofit and install temperature-correction devices to avoid future damages, as well as his attorneys' fees and costs, and for such other and further relief as the Court deems appropriate.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby requests a trial by jury on all issues so triable.

Respectfully submitted,

_____/s/ *Joseph A. Kronawitter*_____

| | |
|---|---|
| Robert A. Horn | MO #28176 |
| K. Christopher Jayaram | MO #50771 |
| Joseph A. Kronawitter | MO #49280 |

HORN AYLWARD & BANDY, LLC
2600 Grand Boulevard, Suite 500
Kansas City, MO 64105
(816) 421-0700
(816) 421-0899 (Facsimile)
rhorn@hab-law.com
cjayaram@hab-law.com
jkronawitter@hab-law.com


Thomas V. Bender          MO #28099
WALTERS BENDER STROHBEHN
      & VAUGHAN, P.C.
2500 City Center Square
1100 Main Street
P.O. Box 26188
Kansas City, MO 64196
(816) 421-6620
(816) 421-4747 (Facsimile)
tbender@wbsvlaw.com


Attorneys for Plaintiff